## GRACE WHITTEMORE NEWLIN ET AL. *v*. MERCANTILE TRUST COMPANY.

[Nos. 68-74, October Term, 1931.]

*Decided January 14th, 1932.*

624

The cause was argued before Bond, C. J., Urner, Adkins, Offutt, Parke, and Sloan, JJ.

*Richard F. Cleveland* and *Russell Duane,* with whom were *Semmes, Bowen & Semmes* and *Duane, Morris & Hecksher,* on the brief, for Grace Whittemore Newlin and the Girard Trust Company, executor, appellants.

*Walter L. Clark* and *Roszel C. Thomsen,* with whom were *George B. Evans* and *Clater W. Smith* on the brief, for Laura E. Boureau, administratrix, appellant.

*Charles McH. Howard,* with whom were *Venable, Baetjer & Howard* on the brief, for the Mercantile Trust Company, executor of Kate Hoyt, appellant.

*Eben J. D. Cross,* for Marjorie C. De Wint and Katherine B. Werner, appellants.

*Emory L. Stinchcomb,* with whom were *Harry K. Davenport* and *Stewart & Shearer* on the brief, for Adele De Wint Van Voorhis, appellant.

*Herbert P. Queal,* submitting on brief, for Adolph F. Roth, administrator, appellant.

*Venable, Baetjer & Howard,* submitting on brief, for the Mercantile Trust Company, executor of William H. Hoyt, appellee.

OFFUTT, J., delivered the opinion of the Court.

These seven appeals from an order of the Orphans' Court of Baltimore City, distributing the residuary estate of William H. Hoyt, late of that city, deceased, present varying contentions of the next of kin of the decedent and possible distributees of his estate as to the true meaning of certain clauses in a codicil to his will.

The facts forming the background of those contentions are these: William H. Hoyt, who for many years prior to his death lived with his wife, Kate Hoyt, in the City of Baltimore, left to survive him no kin nearer than nieces, nephews, grandnieces, and grandnephews. At the time of his death, he had in possession an estate valued at something over $47,000, and a vested remainder in the residuary estate of his brother Louis Thurston Hoyt of New York, who had died in 1901 leaving a large fortune, which he disposed of by last will and testament duly admitted to probate in the Surrogate's Court of the County of New York. Under that will the residuary estate of the testator was left in trust for his widow for her life and at her death for his daughter Aline, and at her death to certain designated legatees, among whom was his brother William H. Hoyt, who was to receive one-fourth of three-eighths thereof.

William H. Hoyt, for some reason not fully disclosed by the record, apparently failed to realize the value or the extent of his interest in his brother's residuary estate at the time he executed his will on September 9th, 1913, for in it he made no mention of that legacy, but on November 3rd, 1915, he executed a codicil to his will in which he did dispose of it.

At his death, which occurred on January 2nd, 1917, he left to survive him as his next of kin and possible distributees of his estate the persons whose names, together with their relationship to the testator, the share of his residuary estate allotted to each of them recognized in the order from which these appeals were taken as a proper distributee, the date of the death of such of them as died prior to March 16th, 1930, and the names of their personal representatives, appear in the following table:

## NEXT OF KIN AT TESTATOR'S DEATH

| Name | Relationship Testator | Share in Residuary Estate Allowed by Order of Orphans Court | Living or Date of Death | Parent | Remarks |
|---|---|---|---|---|---|
| 1. Adele de Wint Van Voorhis | Niece | 1/6 | Living | Emily Adele de Wint | |
| 2. Garrett S. de Wint | Nephew | 1/6 | Living | do. | |
| 3. Francis A. de Wint | Nephew | | D. 12/10/26 | do. | Laura E. Boureau, Admx. |
| 4. Mabel T. W. Roth | Niece | | D. 9/19/29 | Ella Carroll | Adolph S. Roth, Excr. |
| 5. Louis H. Whittemore | Nephew | 1/6 | Living | do. | |
| 6. Grace de Lancey Newlin | Grand Niece | | D. 9/30 | Grace W. Newlin | Gerard Trust Co., Excr. |
| 7. Grace Whittemore Newlin, called in will Grace deL. Verplanck Newlin | Niece | 1/6 | Living | Ella Carroll | |
| 8. Aline Woodfield | Niece | | D. 1923 | Louis T. | John W. Woodfield, Excr. |
| 9. Marjorie C. de Wint | Gr. Niece | 1/12 | Living | Francis A. | Gr. dtr. Emily Adele |
| 10. Katherine B. Werner | Gr. Niece | 1/12 | Living | Francis A. | do. |
| 11. Kate Hoyt | Widow | 1/6 | D. Nov. 29/27 | | Merc. Tr. Co., Excr. |

So much of the testator's estate as was in his possession at the time of his death was, by an order of the Orphans' Court of Baltimore City, distributed in accordance with the provisions of his will on December 5th, 1928, and, while the propriety of that order is not in issue in this case, since the will and the codicil are complementary, and as the provisions of the will reflect some light upon the meaning which the testator intended to convey by the language employed by him in the codicil, in construing the codicil it is also necessary to examine the will.

By that will, dated September 9th, 1913, the testator made the following disposition of the property which he owned and possessed at the time of his death: To each of the following persons described as his "own nieces and nephews" he bequeathed $342, Adele De Wint Van Voorhis, Garrett Sprarert De Wint, Francis Adams De Wint, Grace De Lancey Verplanck Newlin, Mabel Thurston Whittemore, Louis Hoyt Whittemore; to his wife, Kate Hoyt, he bequeathed $12,500; and to John and Aime Hanold he bequeathed seventy dollars each. After those specific legacies, he bequeathed the entire income of the residue of his estate to his wife, Kate Hoyt, for her life, and at her death from the remainder he bequeathed to Aline Woodfield, his niece, $350; to Francis Adams De Wint, his nephew, and Marjorie Couenhoren De Wint and Katherine Belden De Wint, his grandnieces, each $600; $150 each to John and Aime Hanold; and to "each one of my own nieces and nephews in addition to the other provisions in their favor in the foregoing will as follows, to Adele De Wint Van Voorhis, to Garrett Sprarert De Wint, to Mabel Thurston Whittemore, to Louis Hoyt Whittemore, to Grace De Lancey Verplanck Newlin, to Francis Adams De Wint the sum of one thousand dollars ($1,000)," and $200 each to a number of religious, fraternal, and charitable institutions, and he further bequeathed to his wife absolutely his furniture, wearing apparel, and jewelry. He then provided: "If after the death of my aforesaid wife there shall be any surplus of real or personal property remaining after paying all the aforesaid legacies I direct that all such surplus

shall be equally divided per stirpes among my next of kin then living." He named his wife executor of the will, and, upon her refusal to act, the Mercantile Trust Company. Mrs. Hoyt refused to act as executor, and letters were accordingly issued to the Mercantile Trust Company of Baltimore City.

In the codicil, executed November 3rd, 1915, over two years later, in disposing of his interest in the estate of his brother, he bequeathed to his wife, Kate Hoyt, $34,000 absolutely, "in addition to the other provisions in her favor in the aforegoing will," out of so much of that estate as might come to him or to his estate and from the same source to his "own nieces and nephews" Grace De Lancey Verplanck Newlin, Mabel Thurston Whittemore, Louis Hoyt Whittemore, Adele De Wint Van Voorhis, Garrett Sprarert De Wint each $7,000, to Francis Adams De Wint $3,200, to his "own grand nieces and nephews" Marjorie Couenhoven De Wint, Katherine Belden De Wint, and Grace De Lancey Newlin, each $3,000; to Alice B. Thurston, William S. Thurston, and John R. Thurston, $2,000 each; to John, William, George, Annie, and Myrtle Hanold, $500 each; to different friends and institutions, legacies ranging from $150 to $600 each. He further provided that these legacies should be payable "immediately after the death" of his wife, and that none should be payable before his share of the estate of his brother became payable to him or to his estate. He then provided in the thirteenth, fourteenth, fifteenth, seventeenth, and eighteenth clauses of his will as follows:

"Thirteenth: I direct that all the surplus proceeding from this will and codicil shall be equally divided between my wife, the aforesaid Kate Hoyt, and my next of kin such as my nieces and my nephews as well as my own grand-nieces then living.'

"Fourteenth: I will that all the legacies in this codicil shall be payable out of my share in the residuary estate of my brother, the late Louis Thurston Hoyt of New York that may come to me or to my estate, should my share in the residue of my brother's

estate remaining after deducting the thirty-four thousand dollars ($34,000) herein specifically bequeathed to my wife, Kate Hoyt, be insufficient to pay the foregoing legacies in full they shall all be proportionately abated.

"Fifteenth: None of the legacies given in this codicil shall be payable before my said share in remainder rests in possession and none of the legacies in this codicil shall bear interest.

"Seventeenth: After paying all the legacies and bequests given in this will and codicil there shall be any surplus of real or personal property remaining I will that such surplus shall be equally divided *per stirpes* between my wife Kate Hoyt and my next of kin then living, as nieces and nephews.

"Eighteenth: Should any beneficiary named in this will passing prior to the probating of this my Last Will and Testament then my bequests to the one or one having died shall pass to my wife Kate Hoyt."

Louis T. Hoyt died August 2nd, 1901, William H. Hoyt died January 2nd, 1917, Kate Hoyt died November 29th, 1927, and Frances M. Hoyt, the widow of Louis, and surviving life tenant under his will, died March 16th, 1930, and on December 6th, 1930, $305,084.14, the legacy payable to the estate of William H. Hoyt under the will of Louis T. Hoyt, his brother, was paid to his executor, the Mercantile Trust Company.

On March 10th, 1931, the executor filed in the Orphans' Court of Baltimore a petition in which, after reciting in substance the facts set forth above, it stated that it held for distribution to the wife and next of kin of the testator, and to the other legatees named in the codicil, $297,720.77, and prayed that an order might be passed fixing a day for a meeting of all persons entitled to participate in the distribution of the said estate, and that such distribution might then be made under the court's direction and control.

Upon the petition a day was fixed, the parties notified, testimony was taken, a hearing was had, and thereafter, on

July 16th, 1931, the court passed an order in which, after directing the executor to pay the specific legacies as provided in the codicil, except the legacy to ·Concordia Lodge of Masons, which was to be retained for further proceedings, it was directed that "the residue of said estate and property remaining in the hands of said executor after paying the legacies aforesaid and the expenses of this proceeding and any other proper allowances of the executor shall be by said executor, distributed ·and divided to and among the following named persons in the following proportions, the court finding that Kate Hoyt is entitled to a *per capita* share of the rest and residue of said estate with the nieces and nephews living at the time of the death of Frances M. Hoyt, the widow of Louis Thurston Hoyt of New York; and that the children of Francis Adams De Wint, a deceased nephew, viz.: Marjorie C. De Wint and Katherine B. Werner, take his share by representation, and are therefore entitled to receive the same:

| "Name of Distributee | Relationship | Share |
|---|---|---|
| Kate Hoyt .............. | Widow | 1/6 |
| Adele de Wint Van Voorhis.. | Niece | 1/6 |
| Louis Hoyt Whittemore.... | Nephew | 1/6 |
| Garrett Sprevert de Windt.. | Nephew | 1/6 |
| Grace W. Newlin.......... | Niece | 1/6 |
| Marjorie C. de Wint....... | Grand niece | 1/12 |
| Katherine Belden Werner.. | Grand-niece | 1/12" |

That scheme of distribution was apparently based upon a determination by the orphans' court (1). that the legacy to the testator's widow under the residuary clauses of his will vested at his death; (2) that his next of kin under the language of those clauses formed a class in which the widow was not included; (3) that the legacy to that class vested at the death of the widow of Louis Thurston Hoyt; (4) that the widow of the testator "took *per capita* with the nephews and nieces, and that the children of the deceased nephew take his share by representation," the number of the *capita* or heads being fixed by the number of the members of the class at the time when their interests vested, and adding to that group Kate Hoyt, the widow of the testator.

The effect of that order was to exclude from any participation in the estate the executor of the estate of Mabel Thurston Whittemore Roth, a niece who had died in 1929, John William Woodfield, executor of Aline Woodfield, a niece, who had died without issue surviving in 1923, the Girard Trust Company of Philadelphia, executor of Grace De Lancey Newlin, a grandniece who died in September, 1930, leaving no surviving children, and Laura E. Boureau, administratrix *c. t. a.* of the estate of Francis A. De Wint, a nephew who died in 1926.

Appeals from that order were taken by Grace Whittemore Newlin and the Girard Trust Company of Philadelphia, executor of Grace De Lancey Newlin, appellants in Nos. 68 and 69 of the October term of this court, who contend (1) that the nieces, nephews, and the widow of the testator together formed a single class in which children of a deceased niece or nephew took by representation, (2) that the legacy to that class vested at the date of the death of Frances M. Hoyt, or March 16th, 1930, (3) that as the widow was not living at that time her estate takes nothing, and (4) that the grandnieces and grandnephews of the testator who "survived the vesting period" take *per capita* with the other beneficiaries; by Laura E. Boureau, administratrix of Francis A. De Wint, appellant in No. 70 on that docket, who contends (1) that the residue vested at the time of the testator's death, or at the time of the probate of his will, (2) in a class of persons named in the 13th clause of the codicil who were living at the time his will was probated, (3) *per capita;* by the Mercantile Trust Company of Baltimore, appellant in No. 71 on the same docket, which contends (1) that the gift under the residuary clauses to the widow was "vested and not contingent until" the New York estate fell in, and (2) that the widow's share was one-half of the residue; by Adele De Wint Van Voorhis, appellant in No. 72 on the same docket, who contends (1) that the residue vested on March 16th, 1930, (2) in the next of kin of the testator then living, including in that description, by representation, the two daughters of Francis A. De Wint, a deceased nephew: by Katherine B.

Werner and Marjorie C. De Wint, the appellants in No. 73 on the same docket, who contend (1) that only the next of kin of the testator living on March 16th, 1930, were entitled to participate in the distribution of the residue of his estate, (2) that they took *per stirpes* and not *per capita,* and (3) that the bequest to Kate Hoyt was contingent upon her surviving the vesting period, and that, since she died prior to that time, her estate takes nothing; by Adoph F. Roth, executor of Mabel Thurston Whittemore Roth, appellant in No. 74 on the same docket, who contends (1) that all legacies under the will vested immediately upon the death of the testator, (2) that his residuary estate vested in his widow and next of kin equally, and (3) that children of a deceased niece or nephew took only if the parent died before the legacies vested, and then only the share the parent would have taken.

From these varying contentions, two questions emerge as the controlling inquiries in the case: (1) The time at which the interests of the beneficiaries under the residuary clauses of the codicil to the will of William H. Hoyt vested; and (2) whether under those clauses the legacy to Kate Hoyt was to her separately or as a member of a class. In approaching these questions, the primary and controlling consideration is to ascertain and give effect to the intention of the testator. Mr. Miller has with his usual precision and clarity stated that cardinal principle of testamentary construction in the following language, which occurs in his work on *The Construction of Wills,* sec. 9, where it is said: "The object of the court in cases involving the construction of wills is, first to ascertain the intention of the testator; and then, secondly, to give effect to that intention so far as is consistent with the rules and the policy of the law. This principle has been expressed in a great number of cases in the Maryland reports, with varying phraseology," and has supported the text by citations to a number of decisions of this court which are collected in notes 1 and 2 to that paragraph.

In applying that rule, there are certain ancillary canons to be observed which are as definite and as well settled as the rule itself. The first is that the testator is presumed to have

meant and intended what he actually said, for, after all, the will is his will, and, if in it he expressed his intention in clear and unambiguous language, it would be manifestly inexcusable and unjust to him and to the beneficiaries under the will to look further for his meaning, or to attribute to him an intention which, while it would more nearly approximate what others might consider natural justice, would nevertheless be contrary to the plain meaning of what he actually did say. *Id.*, sec. 10. Second, in determining the meaning of the language of a particular clause, the whole context of the will must be examined, in order that as far as possible force and effect may be given to every part of it, to the end that all of its directions may be harmonized. *Id.*, sec. 11, note 1. Third, where some doubt or uncertainty inheres in the language of some clause or clauses of the will, to solve that doubt it is not only permissible to examine the entire will, but also to consider the circumstances surrounding its execution, such as the nature and character of the estate, the situation of the testator at the time, and the relations then existing between him and the objects of his bounty, or, in other words, to assume the position of the testator, and in reference to that particular object to occupy his "armchair." *Miller, Construc. Wills*, sec. 12. Fourth, in interpreting the language of the will, ordinary words in general use will be given their ordinary and accustomed meaning, except where it is clear from the context that they were given a different meaning by the testator, and words of art are to be given their technical meaning, unless it is apparent that the testator understood and used them in a different sense. *Id.*, sec. 24. And fifth, running through all of these rules and controlling their application, is the principle that the function and the duty of the court is to construe the will which the testator executed, and not to make one for him.

Reverting, with those principles in mind, to the first of the questions stated above, it is apparent from an examination of the photostatic copy of the papers, filed in this court, that the codicil as well as the will was a holograph, and the codicil affords intrinsic evidence of the fact that the drafts-

man was not familiar with the technical legal significance of the phraseology usually employed in testamentary composition, and that what he set out to do was to tell in his own way, undisturbed by legal advice, what he wanted to do with his estate. In doing that, however, he seems to have been unconscious of the fact that, while the meaning of what he said may have been perfectly clear to him, it should be so expressed that it would be equally clear to others who might read it at a time when he would not be present to explain what he meant.

An examination of the two instruments, the will and the codicil, leaves little doubt that his controlling purpose and intent was (1) to provide for his wife, in so far as his resources permitted, in such a manner as to insure her comfort and to protect her against want during her life, and (2) leave the major part of his fortune to his blood relatives at her death. So that, when we come to construe the two residuary clauses, we must assume the position of the testator, who undertook to dispose of an estate which he knew was valuable, but how valuable he did not know, and which in the ordinary course of nature might not vest in possession until long after his death and the death of his wife, in such a manner as would best insure her comfort and ease during her life, and at the same time make it certain that at her death the greater part of it would go to his own blood relatives.

At the time he executed the will, it does not appear that his actual estate in possession, to which alone he could look with any certainty for the support of his wife after his death, was worth more than it was when he died, about $47,000. Yet out of that estate, while he left his wife $12,500 absolutely, he also left cash legacies of $342 each to six of his nieces and nephews living at that time, and at her death to his nephews and nieces and grandnephews and grandnieces legacies aggregating $8,150, and the entire residue of his estate to his next of kin "then living".

When he came two years later to write the codicil, he knew that it was possible, but hardly probable, that his

share in his brother's estate would vest in possession prior to his death, for at that time both his sister-in-law, Frances M. Hoyt and her daughter, Aline Woodfield, who was of the generation after his, were both living. But he knew, too, that eventually it would fall into his estate, and that it might become payable during his own life, or, if his wife survived him, during her life. If it fell in during his life, he could of course deal with it, but what he especially wanted to do in the codicil was to dispose of it in the event that it was paid after his death, but during the life of his wife, and in that event he wanted so much of it as was in his judgment sufficient for the purpose to go to his wife that she might have the benefit of it for her support and convenience. He therefore gave to his wife $34,000 absolutely and the income from the entire residue for life. At her death out of the residue he gave to Grace De Lancey Verplanck Newlin, Mabel Thurston Whittemore, Louis H. Whittemore, Adele De Wint Van Voorhis, and Garrett Sprarert De Wint $7,000 each absolutely, to Francis A. De Wint $3,200 absolutely, and to his grandnieces Marjorie and Katherine $3,000 each, and to his grandniece Grace De Lancey Newlin $3,000 absolutely, and other specific legacies to different persons, and charitable, religious and fraternal organizations as stated above. When he came to deal with what remained after the payment of those legacies, he was faced with the possible alternatives that, if his share of his brother's estate was not paid during his life, it would be paid during his wife's life or paid after her death. He had some doubt whether it would suffice to pay the specific legacies given in the codicil, for he provided that, if it did not, those legacies should abate proportionately, and for that reason, in order that the legacies bequeathed in the codicil would not affect the distribution of the estate under his will, he provided that none of the legacies given in it should be payable until his share of his brother's estate "rests in possession".

When in clause 13 of the codicil he directs that the "surplus" shall be equally divided between his wife and next of kin "then living," and in clause 17 that, "after paying all

the legacies and bequests given in this will and codicil," the surplus should be equally divided *"per stirpes* between my wife Kate Hoyt and my next of kin then living," that language should be read in the light of the general intent manifested by the entire will and the entire codicil (*Miller on Construction of Wills,* sec. 17), and when so read, the ambiguity inherent in the language, in so far as it applies to the next of kin, appears dimly but sufficiently. If his share in his brother's estate was not paid during his wife's life, under the language of those clauses she could not derive any personal benefit from it, except through the possible alienation of the share bequeathed to her. But whenever it fell in, if he gave her an immediate vested interest in a part of it, she would not only have a life interest in the entire residue, but also an interest in the remainder, which would have a present salable value. Both clauses refer to a division of the surplus, but no such division could actually take place until the estate which was to be divided fell in, and the expression "then living" could have no possible reference to any period earlier than that, for the "surplus" to which it refers is the part of the estate left after the payment of "all the legacies and bequests given in this will and codicil," and under the codicil no such payment could in any event be made until the testator's share in the estate of Louis became payable.

When we come to deal with the vesting of the wife's interest under those clauses, we are faced with a question which turns upon whether the testator intended that his wife and his next of kin should together form a single class, or whether the legacies were to his wife and a class composed of his next of kin, independently.

Because of their confused and obscure phraseology, any answer to that question must involve a certain element of conjecture. Yet, in dealing with them, we are guided by certain legal presumptions, and if through their aid those clauses can be given a meaning not inconsistent with their language, and in harmony with the general purpose and intent of the testator as disclosed by the entire will and codicil, they should be so construed.

A testamentary class has been defined as a "body of persons, uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or in some other definite proportions" a gift of an aggregate sum to the class, "the share of each being dependent for its amount upon the ultimate number of persons." *Jarman on Wills* (6th Am. Ed.), p. *232; *Stahl v. Emery*, 147 Md. 126, 127 A. 760; *Dulany v. Middleton*, 72 Md. 77, 19 A. 146. As indicated in that definition, the most striking feature of such a "class" is the incident of survivorship. As to the general principles involved in that definition, there seems to be little dispute, but, in applying them to specific instances, there is no such harmony. Yet throughout the apparently conflicting, and often confusing, mass of decisions on the subject, certain canons appear which, while subordinate to the general rule that the obvious intent of the testator must prevail, have been generally recognized as having a certain persuasive force. One is that a gift to a group of persons *in esse nominatim* is a gift to the individuals and not to a class (*Underhill on Wills,* sec. 552); another is that a gift to persons *in esse* and definitely fixed and identified by the words of the gift at the time is to the individuals and not to a class (*Miller on Wills,* sec. 68). Again, it is generally held that, in the absence of a clear indication of a contrary intent, the time at which the membership of a class is fixed and determined, and at which the respective interests of its members become vested, and assume the character of a tenancy in common, is at the death of the testator. 13 *A. L. R.* 616; *Alexander on Wills,* sec. 880.

The two clauses were evidently intended to be complementary and to be read together, and, when so taken, if read literally, so much of the language employed in them as refers to Kate Hoyt is too obscure to have any definite significance, but, if considered in connection with the general purpose of the testator as manifested in other parts of the will and codicil and with the subject-matter of those instruments, it becomes, if not clear, at least intelligible.

In clause 13 the testator provides that "all the surplus * * * shall be equally divided between my wife, the aforesaid Kate Hoyt, and my next of kin such as my nieces and my nephews as well as my own grandnieces then living." Then as though he realized that the words "equally" and "then living" were of doubtful import, in clause 17 the testator said: "After paying all the legacies and bequests given in this will and codicil there shall be any surplus of real or personal property remaining I will that such surplus shall be equally divided *per stirpes* between my wife Kate Hoyt and my next of kin then living, as nieces and nephews." If Kate Hoyt were eliminated from these two clauses, their meaning would be plain, for the testator obviously intended the phrase *"per stirpes"* in clause 17 to take the place of "my own grandnieces" in clause 13, and to include any children of his nieces or nephews. Given that meaning, his nieces and nephews, and children of those who had died prior to the vesting of the legacy, would have formed a single class, the members of which would have participated in the fund in different proportions accordingly as they were nieces and nephews or the children of deceased nieces and nephews. But, if Kate Hoyt is added to the class, the clauses are unintelligible. For under no circumstances could the legacies in the codicil other than that of $34,000 to Kate Hoyt be paid before her death, and until her death there would be no surplus which could be divided. The language could mean, of course, that, in the event she died before the residue vested in possession, her estate should take in her place (*Perin v. Perin,* 139 Md. 281, 115 A. 51), and that *per stirpes* referred to her children by a subsequent marriage as well the children of nieces and nephews, but, in view of the utter indifference of the testator, as shown by the whole will and codicil, to any claims which his wife's relatives might have upon his bounty, and of his patent solicitude for the relatives of his own blood, such a construction is too remote for serious consideration. On the other hand, it is reasonably clear that he did want his wife to share in the residue, and it may fairly be inferred that he intended that her right to do so should vest

at his death. For, if she is not a member of the class formed by the nieces and nephews and the children of such as died before the residue vested, the law presumes that her interest in the residue vested at her husband's death, and, in the absence of a clearly expressed intent to the contrary, that he meant that. *Supra.* Moreover, such a construction is in harmony with the other provisions of the will and codicil, and is forced if any reasonable meaning is to be given these clauses; for the general intent manifested in both papers was to protect his wife and insure her comfort and convenience during her life, and not to enrich her relatives at the expense of his own.

While, because of the varying weight given to the intent of the testator in different cases, precedents lack the authority properly given them in cases of a character different from this, reference to cases in which a question similar to that under consideration has been considered will serve to illustrate the difficulty of formulating any general rule for determining whether the testator meant by the language under consideration to include his next of kin and his wife in a single class.

In *Pierce's Estate,* 177 Wis. 104, 188 N. W. 78, 79, it was held that a bequest to "my nephews, nieces and half-brother to be equally divided between them and their heirs, share and share alike, * * *" was a bequest to the half-brother individually, and not as a member of the class formed by the other relatives, on the ground that the bequest was immediate, and because the nieces and nephews stood in a different relation to the testator and to each other than the half-brother. And it distinguishes *Manier v. Phelps,* 15 Abb. N. C. (N. Y.) 123, on the ground that in that case the court was influenced in reaching a contrary conclusion by the fact that an intestacy would otherwise have resulted. In *Brittain v. Carson,* 46 Md. 186, it was held that a gift to be "equally divided between my said daughter, Amelia J. Brittain, and the children of Virginia Carson," did not indicate an intention that these beneficiaries should form a class. In *Courtenay v. Courtenay,* 138 Md. 205, 113 A. 717, 718, it was held

that a direction to divide an estate "between my brother, William Courtenay * * * and the three sons of my deceased brother, David Courtenay * * * and their mother * * *" naming them, was a *per capita* gift to each individual named. In *Benson v. Wright,* 4 Md. Ch. 278, it was held that a gift to "the children of Margaret, * * * the children of William, * * * and George Benson, * * * equally, as tenants in common," excluded children of Margaret and William born after the death of the testatrix, but that children born prior to that event took equally *per capita* with George Benson.

In *Perin v. Perin,* 139 Md. 291, 115 A. 51, 52, it was held that a bequest "that my said estate shall be equally divided among my surviving children and said Ella K. Perin," upon the death or remarriage of Ella K. Perin, wife of the testator, was a gift to her and the children in equal shares of the remainder, and that she took a child's share. In *Maddox v. State, Use of Swann,* 4 H. & J. 539, it was held that, under the following clause in the will of John Swann, "As also it is my will and desire, that the moneys arising from the sales of the above-mentioned negroes, and all the residue of my estate, after my just debts are paid, to be equally divided between my brother J. S. and my brother G. S.'s children," Justinian Swann, the brother, took an equal part, but no more, with each of the children of George Swann, and that he and those children took as tenants in common. Nor, because of the nature of the problem, is the difficulty removed by the consideration given it in the textbooks. See *Jarman on Wills,* p. *232, *et seq.*; *Alexander on Wills,* sec. 877; *Miller, Construction of Wills,* c. IX; 28 *R. C. L.* 235; 40 *Cyc.* 1473-1480.

We are therefore remitted to the intention of the testator, in so far as it may be gathered from his language in both the will and the codicil, as the only safe key to the meaning of these clauses. Certain English cases have been cited dealing with testamentary gifts by language somewhat similar to that under consideration, but in those cases the issues which the courts were called upon to decide differed from those involved here, and we cannot regard them as in point.

That intention was, in our opinion, that the residuary legacy to Kate Hoyt was to her as an individual and not as a member of a class, and that it vested at the death of the testator. The objection that that construction is inconsistent with the language of the clauses, because prior to her death there could be no surplus in which she could share, is more apparent than real; for, whether the residue fell in during her lifetime or after her death, her interest in it would have become so fixed upon the death of the testator that, while its value might be increased, it could not be diminished, and she could have aliened or assigned it. *Perin v. Perin, supra.*

The extent of that interest was identical with that of a nephew or a niece. The phrase "equally divided between my wife * * * and my next of kin, * * *" could, of course, mean that the residue was to be divided into two parts, one of which would go to the wife, and one to the next of kin. But not only is such a construction contrary to the general intent of the testator, as expressed in other provisions of the will and codicil, but it is not required by the phraseology of the two clauses. In *Courtenay v. Courtenay, supra,* "between" was construed as equivalent to "among"; in *Brittain v. Carson, supra,* a similar meaning was given to it; in *Maddox v. State, supra,* a bequest of a fund to be "equally divided between" his brother Justinian and his brother George Swann's children was held to be a bequest to Justinian of an equal part and no more with each of the children of George Swann's; in *Re Pierce's Estate, supra,* the same result was reached; in *Jones v. Day,* 102 Md. 99, 62 A. 364, a grantor in a deed of trust directed the trustee in the event of a sale of the property to "divide the proceeds 'equally between himself and each of his children, share and share alike,'" and it was held that in that case "between" meant "among," and in *Edwards v. Kelly,* 83 Miss. 144, 35 So. 418, 420, the word "between" in the clause "in such event," the remarriage of the testator or his wife, "* * * all the property is to be divided equally between the said survivor and our children or their heirs, if any there be," was held to mean "among," the court saying: "We

think it is perfectly obvious from the whole context of the clause and of the entire will that the word 'between' here is used in the sense of 'among.' The decisions show innumerable instances of the interchangeable use of the words. See *Lord v. Moore,* 20 Conn. 122; *Ward v. Tompkins,* 30 N. J. Eq. 3; *Senger v. Senger's Excr.,* 81 Va. 687, where the court say: 'But when they follow the verb "divide" their general signification is very similar, and in popular use they are considered synonymous, though "among" denotes a collection, and is never followed by two of any sort, whilst "between" may be followed by any plural number, and seems to denote rather the individuals of the class, than the class itself generically.' " See also, *Words and Phrases,* First, Second and Third Series.

The word "equally" as used in both clauses was obviously used to limit the ratio between the share given to the wife and that given to each nephew or niece, for, as between the nephews and nieces, it was unnecessary, since the ratio of the share of the members of the class of the nieces and nephews and grandnieces *inter sese* was fixed by the phrase *"per stirpes"* in clause 17, which was clearly intended to apply only to the nieces and nephews, and by the manner of the gift to the class; the effect of that language being to give to the children of each deceased niece or nephew the share its parent would have taken if living (*Lycett v. Thomas,* 153 Md. 448, 138 A. 225; *Jarman on Wills,* p. *1052); for it was apparently deliberately used by the testator to obviate any construction of clause 13 which would result in a *per capita* distribution of the residue among his nieces and nephews and grandnieces and grandnephews equally share and share alike.

The only remaining question is the time at which the bequest to his next of kin vested. The bequest to them was a gift to a class. *Stahl v. Emery, supra; Miller on Construction of Wills,* par. 67; *Jarman on Wills,* p. *232. The only words from which the gift can be inferred are to be found in the direction that the surplus or residue of the estate is to be divided between his wife and his next of kin "then living," "after paying all legacies and bequests given in this will or

codicil." He could not have meant "then living" to apply to his own death, for there was no immediate gift of the residue, and as said by Judge Parke in *Ridgely v. Ridgely,* 147 Md. 423, 128 A. 131, 132: "The time of division is designated, and cannot take place until upon the expiration of the precedent life estates; and the division is among the survivor or survivors of the three remaindermen at that time living, as the term 'survivor' means the one who outlives others. There is nothing in the context of the will or in the facts that could admit of the withdrawal of this section of the will from the rule that survivorship is referable to the period of division, and that this point of time is the death of the tenant for life, in those instances where the testamentary disposition simply creates a previous life estate and a gift over to several or the survivors of them. *Straus v. Rost,* 67 Md. 465, 477, 10 A. 74; *Wilson v. Bull,* 97 Md. 128, 135-138, 54 A. 629; *Booth v. Eberly,* 124 Md. 22, 26, 27, 91 A. 767; *Burden v. Burden,* 130 Md. 551, 555-558, 100 A. 776; *Merowitz v. Whitby,* 138 Md. 222, 224, 113 A. 651." It is true that in that case the gift was to the survivor or survivors of three named persons, but the distinction between that phraseology and the words "then living," which imply survivorship, as used in the clauses under consideration, when considered in connection with their context, is a mere shadow. The contingency fixed for ascertaining the members of the class had not occurred when the will was written, but the testator knew that it would occur at some time in the future, but he did not know whether that would be either in his lifetime or that of his wife. He accordingly provided that none of the legacies given in the codicil should be payable until "his share in remainder rests in possession." So that, when he provided that the gift should take effect after all the legacies and bequests under the will and codicil had been paid, he necessarily fixed a time which could not occur until his death, nor prior to his wife's death. The contingency thus designated actually occurred on March 16th, 1930, and only his nieces and nephews, and the children of such of them as had died prior thereto, "then liv-

ing," were with his wife entitled to participate in the distribution of the residue of his estate.

The point was also made that the right of Kate Hoyt to a share in the residue under the codicil was decided adversely to her interests by an order of the Orphans' Court of Baltimore City passed on December 5th, 1928, distributing the estate of William H. Hoyt under his will, and that therefore that question has been finally adjudicated. A sufficient answer to that contention is that the two proceedings dealt with different, independent, and separate estates, and that, while the order in the former proceeding concluded all parties to it as to all matters of law and fact involved in the distribution of the estate of William H. Hoyt under his will, it could have no binding effect upon this court in dealing with a matter of law arising out of the construction of the codicil to his will, which was not before the orphans' court in the former proceeding, but was before it in this proceeding.

The jurisdiction of the orphans' court to construe the codicil of William H. Hoyt in the course of the administration of his estate under it was tacitly conceded by all parties, and for that reason its existence has been assumed by this court.

It follows from what has been said that we have discovered no error in the order from which these appeals were taken, and it will accordingly be affirmed.

> *Order affirmed, with costs to the appellee in each case.*