## ADOLPHUS E. WEHRHANE *vs.* THE SAFE DEPOSIT AND TRUST COMPANY, TRUSTEE, ET AL.

*Merger of Equitable and Legal Estates—Acceleration of Remainder.*

An equitable estate does not merge in the legal estate merely because the same person becomes entitled to both, if it is necessary for the purposes of justice or to carry out the intent of the donor that they should be kept distinct.

A testatrix gave one-third of her estate absolutely to each of her two sons, C. and W., and gave the remaining third to a trustee to pay the income thereof to another son, A., for life, at the discretion of the

trustee, and provided that in no event should said property or income be liable to the claims of the creditors of A. The will directed that upon the death of A. the trustee should transfer the property in equal proportions to C. and W. or their legatees. W. died leaving a will by which he gave his whole estate, including his remainder in one-half of the trust-fund, to a person who conveyed said remainder to A. *Held*, that the acquisition by A. of the legal title to the remainder in one-half of the fund after the life-estate did not operate by way of merger to extinguish the trust-estate for life or to accelerate the vesting in possession of the remainder and that he is not entitled to the possession of one-half of the property so held in trust.

Appeal from a *pro forma* decree of the Circuit Court of Baltimore City.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, ROBERTS, PEARCE and SCHMUCKER, JJ.

*Walter I. Dawkins*, for the appellant.

*Edward I. Koontz* (with whom was *George Whitelock* on the brieff), for the appellee.

PEARCE, J., delivered the opinion of the Court.

Adelheid Wehrhane, by her last will and testament, probated January 25th, 1892, directed that after the payment of her debts, all the residue of her estate should be divided into three equal parts, and for the purpose of effecting such division empowered her executors to sell and convey any part or all of her estate. One of these three equal parts she gave absolutely to her son Charles Wehrhane, and another part absolutely to her son William H. Wehrhane. The remaining third part she gave to The Safe Deposit and Trust Company of Baltimore to be held and managed by said corporation, upon the following trusts : " To apply the net income therefrom to the support and maintenance of my son Adolphus E. Wehrhane during the term of his natural life, or, in its discretion, to pay over to him personally the said income, from time to time as it shall have accrued, but in no event shall said property, so held in trust,

nor shall the income therefrom be liable for any claims or demands of any person or persons, claiming the same as creditors, or otherwise, of the said Adolphus E. Wehrhane, other than such claims as the said corporation shall agree to pay out of said income." The corporation was further directed, "from and immediately after the death of Adolphus E. Wehrhane," to divide the trust property, and any balance of accrued income remaining in its possession after the payments therefrom of any claims against him which it should have agreed to pay, into two equal portions, and to pay over and transfer free from said trust one of said portions to each of her two sons, Charles and William H. Wehrhane; or to such person or persons as they, if then deceased, should respectively have designated by deed, will, or any writing, in the nature of a testamentary disposition, or, in the absence of such designation, to their respective heirs-at-law.

The executors administered the estate in due course of law, and paid over to the Trust Co. $11,150.51, being the one-third of the residue of said estate, and the Trust Co. has ever since duly administered its trust and accounted for all the income.

On April 29th, 1892, Charles Wehrhane and William H. Wehrhane executed a deed to the Trust Co., extending the trust under the will of their mother, so as to embrace the natural life of Emily S. Wehrhane, wife of Adolphus E. Wehrhane, and she has since died.

William H. Wehrhane died October 23, 1895, and by his will, probated February 10, 1896, after giving a few legacies, gave all the residue of his estate, including his interest in the trust-estate of Adolphus E. Wehrhane, to his friend, J. B. Noel Wyatt. Some contention having been made by Adolphus E. Wehrhane as to the validity of William H. Wehrhane's will, and a caveat having been threatened by him, an agreement was made between him and J. B. Noel Wyatt, for the division between them of the whole estate of William H. Wehrhane—including his interest in said trust-

estate, which agreement was carried into effect by the parties, so far as they could do so, by a distribution of said estate made by the administrators December 23, 1896, and including the interest of William H. Wehrhane, in said trust-estate; and on the same day the administrators of William H. Wehrhane, in pursuance of an order of the Orphans' Court of Baltimore City, transferred to Adolphus E. Wehrhane all the interest of William H. Wehrhane in said trust-estate.

On a bill filed in the Circuit Court of Baltimore City by the appellant, praying the Court to assume jurisdiction of the trust and to direct the Trust Co. to pay over to him one-half of said trust-fund, Charles Wehrhane assented to any decree that might be passed, and the Trust Co. united in the prayer to assume jurisdiction, but declined to pay over one-half the trust-fund, unless the will were first construed, and the right of the appellant thereto determined. By consent a decree was passed assuming jurisdiction of the trust and decreeing, *pro forma,* that so much of the bill as prayed for payment to appellant of one-half the trust-fund be dismissed; and it is from the *pro forma* part of this decree that the appeal is taken. In the view which we have taken of this case, it will not be necessary to follow the argument of counsel in detail, or to consider many of the authorities cited by them. Unless the trust created by the will has been extinguished as to one-half the fund, and the appellant has acquired an absolute estate therein, he cannot succeed in this appeal. His contention is that William H. Wehrhane took, under his mother's will, a fee-simple in remainder in one-half of this trust-estate, which vested immediately in possession, though its enjoyment was postponed until the expiration of the precedent life-estate, and that by virtue of his devise and bequest to Wyatt, and of Wyatt's assignment and transfer, and that of Wm. H. Wehrhane's administrator to the appellant, this remainder has vested in him, and the life-estate and remainder having been united in one person, the life-estate has been merged in the remain-

der, the trust which characterized the life-estate has been extinguished, and the fee-simple has become absolute in the appellant; but after careful consideration we are satisfied there has been no merger.

Merger has been defined as " the annihilation by act of law of the less in the greater of two vested estates, meeting, without any intervening estate, in the same person in the same right." 3 *Greenleaf's Cruise*, Title 39, sec. 1 and 2. As a general rule this may be accepted as an accurate definition, but the rule is not inflexible in equity; whether a merger does or does not take place, depending upon the intention of the parties, and a variety of other circumstances. KENT says : " Merger is not favored in equity, and is never allowed unless for special reasons, and to promote the intention of the party." 4 *Kent Commentaries*, 102, m. p.

The Supreme Court of Massachusetts, in *Gibson* v. *Crehore*, 3 Pick. 452, says, " mergers are odious in equity." The law on this head is nowhere better stated than by Washburn in his work on real property, who says : " But there is after all a principle recognized by Courts of Equity which controls their decision in *all questions of merger of the equitable in the legal estate*, and that is, that if it is necessary for the purposes of justice, or to effect the intent of the donor, that the two estates should be kept distinct, there will be no merger, merely by their coming together in one person." 2 *Washburn on R. P.*, 203 (1st ed.) 1863. To sustain this text, he cites among others two cases to which brief attention will be directed. In *Earle* v. *Washburn*, 7 Allen, 95, trustees who held land for the uses of a religious society, with authority to convey to it whenever they deemed it judicious, subsequently conveyed the land to the society, which on the same day executed a mortgage to a third person to aid in building on the land, and immediately reconveyed the equity of redemption to the trustees to be held on the same trust. It was contended on behalf of certain execution creditors of the society, that the conveyance to it by the trustees, vesting the legal estate, merged the equitable

estate, and extinguished the trust, which could not be revived
by the reconveyance ; but the Court said, "this is generally
so, but not always," and held that the trust was not extin-
guished, and the property could not be seized in execution.
The other case mentioned, *Donalds* v. *Plumb*, 8 Conn. 447,
forcibly illustrates the unwillingness of Courts of Equity to
permit the extinguishment of a trust by the operation of a
technical merger.    This was a case of a bequest of all of tes-
tator's estate to be equally divided among his grandchil-
dren at the decease of their mother, Mrs. Kingsbury, and
also of the use of the estate to Donalds and Mrs. Kingsbury,
as trustees for the support of herself and children during
her life.    Plaintiffs filed a bill to have their claim for medi-
cines and attention to Mrs. Kingsbury and her children paid
out of the estate, claiming that as Mrs. Kingsbury, for whom
in part the trust was created, was also a trustee, the equitable
estate was merged in the legal.    But the Court held other-
wise, and said that apart from the fact that the legal and
equitable estates were not commensurate," " a Court of
Equity will always prevent a merger to promote the pur-
poses of justice, or to effect the intent of the donor," that
"the intent of this devisor would be entirely subverted, and
the interest of Mrs. Kingsbury disregarded by such a con-
struction ;    *    *    therefore, with the Master of the Rolls
in *Philipps* v. *Brydges*, 3 Veasey, Jr., 126, I have no diffi-
culty in saying that the common sense, stripped of all tech-
nical and artificial reasons, is that the equitable estate is a
mere creature of this Court, and subsists in idea only, as to
any legal consequences that might result from the posses-
sion of it, but totally distinct from the legal estate.    *    *
Such equitable estates are to be held perfectly distinct and
separate from legal estates."

Now, in the light of these principles and adjudications, let
us see how we should approach the consideration of the
case in hand.

It should be remembered that we are dealing with a will,
and that in all cases involving the construction of such in-

struments, effect is to be given to the intention of the testator, if it can be done consistently with the rules of law. The most cursory reading of this will discloses the intention of the testatrix too plainly to admit of any possible question. By what considerations she was controlled in making the provision for Adolphus E. Wehrhane, is not made apparent, but certainly, not by want of affection, since she secures to him beyond the power of ill-judgment or improvidence the income upon the same amount given absolutely to her other children. But whatever these considerations were, she has plainly and deliberately declared her purpose that he should not control any part of the principal at any period in his life, and that in no event should the principal, or the income therefrom, be made liable for any claims of his creditors, other than such as the trustees should think proper to pay, and this only from income. These were conditions she could lawfully impose upon the bequest, and she has imposed them for the full period of his life. She has also seen fit to withhold from him the power of disposing of the principal by will, and directed that upon his death, the trustee, in whose custody it was to remain for the discharge of the active duties of the trust until his death, should pay over the fund in equal proportions to his two brothers, or to such person or persons as they, in event of their own prior deaths, should have appointed. William has died, and has exercised this power of appointing in favor of J. B. Noel Wyatt; but Wyatt took this interest in the trust-fund subject to all the conditions imposed upon it by Mrs. Wehrhane's will, because they were conditions paramount to the title of his grantor. No voluntary alienation by William H. Wehrhane of his interest in this fund in his own life, no involuntary alienation under execution, or in insolvency, and no disposition by his will, could overreach or defeat the conditions imposed by her will upon the enjoyment and transfer of this trust-estate. Wyatt has assigned his interest, thus acquired, in the trust-estate, to Adolphus E. Wehrhane, and we are now asked to declare that as assignee of Wyatt (against whose enjoy-

ment and control the trust was in full force and effect), he holds the property discharged of the trust, and that the peremptory provisions of Mrs. Wehrhane's will shall be annulled by the operation of a technical merger. We cannot make this declaration. In *Keerl* v. *Fulton*, 1 Md. Ch. 535, Keerl bequeathed property to trustees in trust for his daughter during her life, and from and after her death to convey and assign to her children equally ; provided, however, that no conveyance or assignment be made until, and as, each child reached the age of twenty-one. The Chancellor held that a deceased son of a daughter had a vested interest which ·went to his representatives, but that as he could not if living call for a conveyance until twenty-one, so neither could his representatives demand it until the period when he would have reached twenty-one. Here the appellant can only claim, through the attempted transfer made by the administrators of William H. Wehrhane, and the decision in Keerl's case seems to be decisive of the present case. There the time of transfer was not accelerated by the death of the son, because time was annexed to the transfer, and the application of that principle leaves no room here for the operation of the principle of merger. The fact that time is annexed to the transfer is a circumstance which " renders it necessary for the purposes of justice, and to effect the intent of the testatrix " to keep the two estates distinct.

In *Hinkley* v. *House of Refuge*, 40 Md. 469, the testator, after providing for his wife for her life through the intervention of a trustee, gave certain legacies which he directed to be paid, from and after the death of his wife, out of her trust-fund. The widow renounced under the will, and elected to take dower and distribution, and the legatees thereupon claimed that the time for payment of their legacies was accelerated, and they were entitled to receive them presently. But it was held otherwise, JUDGE ALVEY saying : " It is certainly true at law, if a party devise to A. for life, with remainder to B. and A. renounce the devise, or the first devise be void, the remainder is good, and will take effect im-

mediately.    But while this is the general rule, it is modified under certain circumstances *by application of the principles of Equity*, where it is apparent that the event producing the acceleration of the time for vesting the remainder in possession is not contemplated by the will, and the result produced would contravene the intention of the testator.    In this case it is manifest that it was never contemplated by the testator that the legacies now claimed as payable presently, should be paid before the death of his widow."    He then pointed out clearly that the cases of *Darrington* v. *Rogers*, 1 Gill, 403, and *Clark* v. *Tennison*, 33 Md. 85, relied on by counsel in that case for the application of the doctrine of acceleration, presented very different questions from those before him, and were decided upon other grounds.

There are two cases which might seem at first sight to sustain the appellant on this point : *Davidson* v. *Foley*, 2 Brown's Ch. Cases, 213, and *Craven* v. *Brady*, L. R., 4 Eq. Cases, 209, cited in *1st Jarman on Wills*, 5th ed. 541, in discussing the acceleration of remainders, but on examination we do not find that they controvert the reasoning of the case from *40 Md.*    In *Davidson* v. *Foley*, LORD THURLOW said :  " I would not willingly break in upon any power given by a father to control the extravagance of his son, I would rather extend those powers than control them.    But in the present case, the question is whether the uses for which the trust was created being exhausted (as it must be taken they are) a trust does not result to the tenants for life ;" and because he found those purposes were exhausted and only for that reason he held there was a resulting trust which went to the tenants for life.

In *Craven* v. *Brady*, the testator under a general power appointed real estate, and devised other real estate to his wife for life, and from and after her decease to his son with proviso that if the wife should do any act whereby she would be deprived of the power or right to receive the rents and profits, her life-estate should determine as effectually as by her actual decease.    The widow married again without a

settlement of her life-interest to her separate use, whereby she deprived herself of the right to the rents and profits. LORD ROMILLY held it free from question that as to the property devised, the remainder of the son was accelerated, though it had been held as a general rule that after the failure of a particular estate, under a power of appointment, remainders are not accelerated, on the principle that the testator had shown no such intention. But after considering the question and citing an expression of LORD ST. LEONARDS in *Crozier* v. *Crozier*, 3 Drury and Warren, 365, that " there ought to be no trifling distinctions between *power* and *property* on merely technical grounds," he held that the provisions of the will, taken together, made a clear expression of intention that the appointment to the son was to take place as soon as that in favor of the widow failed, and consequently the estate of the son was accelerated with respect to all the land which passed under the will. This result was reached, however, not by ignoring or contravening the intention of the testator in this regard, but by ascertaining and giving effect to it, and this decision, when analyzed, sustains the decision in 40 Md. We may cite also *Boyd* v. *Sachs*, 78 Md. 497, and *Randall* v. *Randall*, 85 Md. 439.

The *pro forma* decree being in accord with our views of the law, it will be affirmed.

> *Decree affirmed with costs above and*
> *below.*

(Decided March 15th, 1899).