BAKER ET AL. *v.* BAYLIES ET AL., ETC.

[No. 286, September Term, 1962.]

*Decided April 9, 1963.*

The cause was argued before HENDERSON, HAMMOND, PRES-COTT, MARBURY and SYBERT, JJ.

*William A. Fisher, Jr.,* with whom were *Semmes, Bowen & Semmes* on the brief, for Jeanette B. McNerney, one of appellants.

*B. Conway Taylor, Jr.,* and *Jon F. Oster,* with whom were *Due, Nickerson, Whiteford & Taylor, Hinkley & Singley, William O. Doub, George M. Radcliffe* and *Niles, Barton, Gans & Markell* on the brief, for Charles B. Baker and others, other appellants.

*Melvin J. Sykes,* with whom were *Philip L. Sykes* and *Roy R. Rigby* on the brief, for Kenton S. and Alfred J. Baylies, part of appellees.

Submitted on the brief by *J. Crossan Cooper, Jr., Russell R. Reno, Jr.,* and *Venable, Baetjer & Howard,* for Mercantile-Safe Deposit & Trust Co., other appellee.

HAMMOND, J., delivered the opinion of the Court.

The chancellor construed the will of John H. Baylies, who died in 1911 a resident of Maryland, as passing an ultimate remainder to those persons living in 1961 (when the last sur-

viving life tenant died without issue) who would take from the testator, under the law in effect in 1911, "an estate of inheritance in lands in fee vested in me by purchase, in the event of my death intestate, according to the existing law of the State of Maryland." The appeals are, respectively, by one who would take if the ultimate remainder had been intended to pass to the heirs of the testator living at his death, ascertained with reference to the law then in force, and by those who would inherit if both the class of takers and the applicable law are ascertained as of 1961.

The will left the rest and residue of the Baylies estate in trust for the widow for life and from and after her death in equal trust for the son and daughter of the testator during their joint lives. At the death of one of them, leaving issue, the half share of the one so dying went to such issue upon arrival at the age of twenty-one years. If there were no issue living at the critical times, the surviving son or daughter was to be paid all the income for life, and:

> "In case both my said son and my said daughter shall die without leaving any issue him or her surviving; or in case no child or children of my said son or my said daughter shall live to attain the age of twenty-one years, in that case I give my whole estate to such person or persons as would take from me an estate of inheritance in lands in fee vested in me by purchase, in the event of my death intestate, according to the existing law of the State of Maryland."

The parties are in agreement, justifiably we think, on the following matters:

(a) When the will was written in 1903 and when it was probated in 1911, there were in effect three statutory patterns of intestate devolution. There was one order of distribution for real estate vested in the intestate by descent from ancestors, a different order of distribution for real estate vested in the intestate by purchase or otherwise than by descent from ancestors, and a third pattern, different from the first two, for the distribution of personalty.

(b) With respect to all three types of descent, the law pro-

vided "that there be no representation admitted among collaterals after brothers' and sisters' children" (Code (1911), Art. 46, Sec. 27, for real estate vested by purchase).

(c) In 1916 the legislature changed the order of distribution and, as a result, the distribution of real estate of all kinds was assimilated to the order of distribution of personal property; and the provision whereby children of deceased nephews and nieces could not share by representation with surviving nephews and nieces was eliminated. (See Chapters 325 and 224 of the Laws of 1916).

(d) When John Baylies died in 1911, his estate consisted of realty worth about $12,000 and personalty of a value of approximately $103,000.

(e) The testator was survived by his widow and a daughter and a son. The widow died in 1923, the daughter, unmarried and childless, in 1945, and the son, unmarried and childless, in 1961. The testator's closest living relatives at his death, other than his wife and children, were a brother and a sister. At the death of the testator's son in 1961, the testator's closest living relatives were two of his nephews, Kenton and Alfred Baylies, appellees, who took the estate under the decree appealed from. Five other nephews and nieces, living at the death of the testator, died prior to 1961 leaving children (or grandchildren, the children of deceased children), who were living in 1961.

(f) The will created alternative contingent remainders.

(g) The remainder to the heirs of the testator was a gift of a contingent future interest to a class, rather than to named or immediately ascertainable persons. (*Evans v. Safe Deposit and Trust Co.*, 190 Md. 332, 338.)

We have comparatively little difficulty with the case. The will affords some, if faint, internal evidence of the testator's intent, as to the time the heirs who were to take his estate were to be ascertained. If the class is to be fixed as of the testator's death, the members would be his children. The incongruity of finding an intent to ultimately give to a legatee who is a life tenant the remainder outright, as heir, after his death, has been commented on in the texts and the cases, 3 Restatement *Property* Sec. 308, Comment k; 5 *American Law of Property,* Sec.

22.59 (pp. 431-432) ; cases collected in Note 30 A. L. R. 2d 393, 413, *et seq.*; but this has not prevented judicial constructions that such a result was intended or required. See *Weller v. Kolb,* 128 Md. 221; Cf. *Safe Deposit and Trust Co. v. Carey,* 127 Md. 593, 596-597.

The testator provided exhaustively for all contingencies in which his children or their issue were to take. The gift of the ultimate remainder to a class of "such person or persons" as he specified gives a hint, inconclusive though it may be, that others than his descendants were contemplated.

The testator imposes various conditions of survival on the vesting of interest in his descendants. This gives some ground for inferring that if Mr. Baylies required the nearest and dearest objects of his bounty to survive in order to take, he intended to exact as much of those who were to take if all issue failed. So read, the plan of the will was to leave the estate to the testator's closest relatives living at the vesting of either of the alternative contingent remainders.

The will was drawn by an experienced and competent lawyer in 1903. The case of *Demill v. Reid,* 71 Md. 175, had been decided some fourteen years earlier. In that case the will gave a life estate to a grandson, with alternative contingent remainders to his children and their issue, if any, or if none then to the children of a son of the testator. The second contingency occured and the remainder was given to the children of the son then living to the exclusion of those who would take as the representatives of children who had died before that time. Judge Miller, for the Court, said: "It seems to us to be clear law, as well as good sense, that in a case like this where there is an ultimate limitation upon a contingency to a *class of persons* plainly described, and there are persons answering the description *in esse* when the contingency happens, they alone can take." Between the drafting of the will and its probate in 1911, *Thom v. Thom,* 101 Md. 444, 458, and *Schapiro v. Howard,* 113 Md. 360, both of which followed *Demill v. Reid,* were decided. It is inferrable that the testator thought that the language he used would compel the result which had been reached in *Demill, Thom* and *Schapiro.*

The opinion in *Demill v. Reid* and the rule which it laid down

by the language quoted above, have been criticized unfavorably from time to time (see *Evans v. Safe Deposit and Trust Co., supra,* at pp. 338-340 of 190 Md., and the discussion of the case and the rule by the Supreme Judicial Court of Massachusetts in *Second Bank-State Street Trust Company v. Weston,* 342 Mass. 630, 174 N. E. 2d 763), and the impact of the rule has been restricted by construing wills as applying to named or ascertainable remaindermen so that the *Demill* doctrine was not controlling. The *Demill* rule is clearly recognized by this Court as one of construction only, and not as a binding rule of law. *Boynton v. Barton,* 192 Md. 582, 588-592.

Despite the fact that few cases in this Court have applied the *Demill* rule in recent years, it is recognized as currently in force in Maryland as a rule of construction, where it is properly applicable. In the *Evans* case, Judge Markell said for the Court at pages 339-340 of 190 Md., after referring to *Hans v. Safe Deposit & Trust Co.,* 178 Md. 52, and *Safe Deposit & Trust Co. v. Bouse,* 181 Md. 351: "These cases are not to be regarded as overruling *Demill v. Reid* and the rules of construction of class gifts, which have been too long and too often approved by this court to be now overruled." In *Cowman v. Classen,* 156 Md. 428, 446; *Billingsley v. Bradley,* 166 Md. 412; *Ross v. Safe Deposit and Trust Co.,* 168 Md. 65; and *In re Holton Trust,* 169 Md. 640, the *Demill* rule was applied. See also *Miller, Construction of Wills,* Sec. 237; *Reno, Future Interests in Maryland,* 15 Md. L. Rev. 193, 220.

The thorough and scholarly review of the Maryland law on the point by Justice Cutter in *Second Bank-State Street Trust Company v. Weston, supra,* led the Supreme Judicial Court of Massachusetts to say (p. 640 of 342 Mass., p. 769 of 174 N. E. 2d): "As the Maryland decisions now stand, we feel constrained to deal with the *Demill* rule in the same way that the Maryland court seems to do, that is to treat it as still existing despite the indications in the *Chism, Evans* and *Boynton* cases that there has been a very real shift away from it, at least of emphasis, since the *Demill* and the *Schapiro* cases were decided. The Maryland court (in considering the application of the *Demill* rule) now appears to give weight (although it

is not clear how much) to conflicting considerations analogous. to the rule favoring early vesting, and to apply the *Demill* rule principally in cases (see the language of *Chism v. Reese,* 190 Md. 311, 322, 58 A. 2d 643) where some testamentary language or background circumstance also points to determination of class membership at a future time."

We think the rule of construction of *Demill* and such evidences of intention as the will affords lead to a construction that those who were to take the Baylies estate, if no issue of the testator survived at the critical point, were the members of the prescribed class then living.

The will gives persuasive evidence, we find, that the testator intended the law in force when it was made (and when it was probated) to control the determination of those who would be his heirs at the termination of the last life estate. He had the right to use any yardstick he chose which did not violate the law. Whether a testator intends that beneficiaries, classes or interests are to be determined by the law in force (a) when the will is made, (b) when he dies, or (c) when the beneficiaries are fixed or the interest vests is a question of his intent to be deduced from the language of the will, read in the light of the surrounding facts and circumstances. 4 *Page, Wills* (Bowe-Parker Rev.), Sec. 30.8 at 60; 5 *American Law of Property* Sec. 22.60; *Thom v. Thom, supra* at pp. 457 and 458 of 101 Md.

The testator's direction that his heirs are to be those who would take "an estate of inheritance in lands in fee vested in me by purchase, in the event of my death intestate" seems clearly to have been a designed and deliberate choice of one of three patterns of intestate distribution with which he was familiar, and a rejection of the other two. Although his estate consisted almost entirely of personalty, he chose to have it pass as a certain class of real estate would pass. The use of a particular, albeit somewhat artificial, definition applicable to land acquired by purchase when his estate was nine-tenths personal, and it is not known whether he had bought or inherited the land he owned, negates a deduction that he intended to delegate to future legislatures the right to redefine the class he had in mind and suggests convincingly that he was incorporating in

his will by reference a specific set of statutory provisions as they then stood on the books.

We think that when the testator referred to "the existing law," he meant this set of statutory provisions. Consistently in his will when he intended to refer to a future date, he specified the person to take or used the word "then". In the light of this consistent use, the absence of the adverb "then" to qualify the participle "existing," strongly suggests that no such qualification was in the mind of the testator. We are persuaded the testator meant to use the law in force when he drew the will as the standard to determine the ultimate takers of his estate if his issue did not take, and that such takers were to be those within the definition he adopted, living in 1961 when the last life estate terminated.

*Decree affirmed, costs to be paid
from the estate.*