MERCANTILE-SAFE DEPOSIT AND TRUST COM-
PANY, TRUSTEE u/w JOHN S. GITTINGS, ET AL. *v.*
MERCANTILE-SAFE DEPOSIT AND TRUST
COMPANY, SUCCESSOR TRUSTEE u/w
ANNIE M. WINTER, ET AL.

[No. 208, September Term, 1966.]

*Decided April 4, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*Eugene H. Schreiber,* with whom were *Moses W. Rosenfeld* and *Blades & Rosenfeld* on the brief for Mercantile-Safe Deposit & Trust Company, Trustee, u/w of John S. Gittings, etc., et al., part of appellants; *John S. McDaniel, Jr.,* with whom were *Cable & McDaniel* on the brief for Gladys Gittings Barrett, appellant-appellee.

*Allan H. Fisher, Jr.* for Samuel J. Fisher, Adm'r de Bonis Non, etc., one of appellees; *F. Hooper Bond* for Mercantile-Safe Deposit & Trust Company, Successor Trustee u/w of Annie M. Winter, another appellee; (no brief filed for other appellees)

OPPENHEIMER, J., delivered the opinion of the Court.

Mercantile-Safe Deposit and Trust Company, as Successor Trustee under the Will of Annie M. Winter, deceased, filed in Circuit Court No. 2 of Baltimore City a Supplementary Bill of Complaint to obtain a judicial construction of Item 7 of the Will of Annie M. Winter.

Item 7 of the Winter Will reads as follows:

> "7. I give, devise and bequeath all the rest, residue and remainder of my estate, real and personal, unto my son, John S. Gittings, his heirs, executors and administrators, upon trust to divide the same into two equal parts, and thereupon to stand seized and possessed of one of said equal parts of my residuary estate, upon trust to pay the interest and dividends thereof as they shall accrue unto my said grand-daughter, Eleanor A. Moale, for her sole and separate use for

the term of her life, and from and after her decease, upon trust to and for the benefit of her children equally between them, share and share alike, and to vest in and to be paid or transferred to them after the death of my said grand-daughter, Eleanor A. Moale, when they attain the age of twenty-one years, if male, or if female, when they shall attain that age or shall marry; and if any or either of them shall die before his or her share shall become payable as aforesaid, the share of him or her so dying shall go and be paid or transferred to and amongst the survivor or survivors of them, share and share alike, payable as aforesaid, and if all of them shall die before his or her share shall become payable as aforesaid, then the said one-half of my said residuary estate shall go and be transferred to the children of my son, John S. Gittings, equally share and share alike; And as to the remaining equal half part of my said residuary estate, upon trust to divide the same into as many equal parts as there shall be living children of my son, John S. Gittings, at the time of my death, and upon further trust to stand seized and possessed of one such equal part of said half part of my said residuary estate in trust for or for the benefit of each of the said children of my son, John S. Gittings, to pay the interest or dividends of the same respectively to said respective children of my son, John S. Gittings, until they severally attain the age of thirty years, and as and when they shall respectively attain the age of thirty years to pay or transfer to them respectively the principal of their shares aforesaid."

Annie M. Winter, a resident of Howard County, Maryland, died in 1902, leaving a Last Will and Testament dated September 30, 1898 and duly admitted to probate by the Orphans' Court for that county on November 18, 1902.

Annie M. Winter was survived by five children of John S. Gittings, only one of whom, Gladys Gittings Barret, was living at the time of the death of Eleanor A. Moale (Lehr). John S. Gittings died on January 23, 1926 survived by the same five children. He had also two other children who died at infancy

before the testatrix made her will, namely, John S. Gittings, III, who died in 1879, aged one year, and William Roger Gittings, who died in 1882, aged ten months. The five children who survived their father are: (1) Henry May Gittings, who died testate on January 22, 1931, his residuary estate having become vested in his only child, Rosalie May Gittings Drexel; (2) Gladys Gittings Barret who is presently living; (3) Dorothy Rosalie Gittings Salvati, who died testate on October 14, 1932, domiciled in Baltimore, but then residing in Rome, Italy, and whose residuary estate became vested in her husband, Cesare Salvati, who cannot now be found and is presumably dead; (4) John Sterett Gittings, the younger, who died testate, domiciled in Wilmington, Delaware, on June 17, 1961, and whose residuary estate is vested in his three surviving children—Barbara Katharine Gittings, John Sterett Gittings, Jr., and Eleanor A. Gittings Taylor; and (5) Frederick May Gittings, who died testate on July 9, 1952, domiciled in Baltimore County, Maryland, without issue, and whose residuary estate has become vested in three charitable institutions—the Roman Catholic Archbishop of Baltimore, The Maryland Workshop for the Blind, and the Hospital for Consumptives of Maryland (Eudowood). The next-of-kin of Annie M. Winter were her son, John S. Gittings, and her granddaughter, Eleanor A. Moale (Lehr), both of whose residuary estates were left in trust, the trustees of which appeared as parties respondent in this proceeding. All known parties having a possible interest in this estate were joined as parties respondent to the proceedings and received actual notice thereof (except Cesare Salvati).

On April 8, 1964, Eleanor A. Moale Lehr died, never having had any children.

The questions involved are whether there was a partial intestacy under the Winter will, so that the remainder of the life estate of the testatrix's granddaughter, Eleanor Moale Lehr (Eleanor), must be distributed to the personal representatives of the testatrix's next of kin; and, if there was no intestacy, whether the remainder of Eleanor's life estate should be distributed (1) to the children of the testatrix's son, John S. Gittings (John), living at the death of the testatrix in 1902, (2) to John's children living at the date of his death in 1926, (3)

to John's children living at the date of Eleanor's death in 1964, (4) or to John's children and descendants of deceased children. Judge Prendergast, in a thorough and carefully reasoned opinion, held that there was no intestacy and that, under the will, the remainder of the trust estate created for Eleanor passed at her death to the children of John living at the time of the death of the testatrix.

The principles applicable to the construction of wills in this State are firmly established. They are summarized in *McElroy v. Mercantile-Safe Deposit & Trust Co.*, 229 Md. 276, 283-84, 182 A. 2d 775 (1962). As always, the task of the Court is to apply the principles to the particular document before it.

I

"One of the strongest presumptions of the law is that where a will contains a residuary clause, every intendment shall be made against there either being a general or a partial intestacy." *McElroy, supra*, at 229 Md. 283. In Item 2 of her will, the testatrix stated: "And as to all my real and personal estate, I hereby dispose of the same as follows * * *" Item 7, the residuary clause, begins as follows: "I give, devise and bequeath all the rest, residue and remainder of my estate, real and personal * * *" These express manifestations of the testatrix's general intent re-enforce the presumption against there being a partial intestacy. However, where the residuary clause itself does not make a complete disposition of the residuum, the Court will not fill the void; it will not create a new will for the testator. Partial intestacies have been found in a number of cases where the will contained residuary clauses, but the testator failed to dispose of a portion of the residue. See cases cited in the dissent in *McElroy*, at 229 Md. 291.

In this case, Item 7 of the will clearly and unambiguously provided for a remainder to John's children, after Eleanor's death, in the event that Eleanor had children and all of such children died before their shares became payable. The will did not provide in terms for the possibility of Eleanor never having children. That possibility became the fact. The parties who contend that there is a partial intestacy argue that, to avoid such an intestacy, it would be necessary for the Court to add

language to the will and thereby supply a clause which is not present. Such an interpolation, they submit, would be inconsistent with decisions such as *Smith v. Baltimore Trust Co.,* 133 Md. 404, 105 Atl. 534 (1919) and *Heald v. Heald,* 56 Md. 300 (1881), which hold that no words can be supplied, as long as there is any fair ground to question what particular words were intended to have been used.

The intestate claimants argue also that Items 2 and 3 of the will show that the testatrix was aware of the possibility of the failure of a remainder over because of the lack of children. In these items, the testatrix provided for two trusts, each of $4,000, for a niece and nephew, in each case for life, then for the benefit of the children of the life beneficiary. Item 2 then provided:

> "and if all of them shall die before his or her share shall become payable as aforesaid, then the said sum of four thousand dollars, or the securities representing the same, shall go and be transferred to my nephew, Harry Aldridge, for the term of his life, and after his death to such of his children as, if male, shall attain the age of twenty-one years, or if female, shall attain that age or shall marry, and should both the said Mary and the said Harry die without children capable of taking under this clause of my will, then the said sum of four thousand dollars or the securities representing the same shall sink into and become part of the surplus of my estate and be disposed of accordingly."

There was a corresponding provision in Item 3.

That the testatrix expressly provided for the possibility of the life tenant not having children in Items 2 and 3, under the circumstances set forth in those items, does not mean that she intended a partial intestacy in the residuary estate if a similar situation occurred. In Items 2 and 3, the contingency provided for was that both the niece and nephew would die without leaving children and the phrase "die without children capable of taking" was particularly appropriate to cover the combination of circumstances envisaged. In Item 7, the trust for Eleanor terminated, at the latest, when any of her children who survived her attained the age of 21 or married. The situation envisaged

in Item 7 was simpler because of the absence of dual contingencies. Unlike the dispositions in Items 2 and 3, the trust was not to continue for the life of John or for any period of the lives of his children who survived him.

Under the contention of the intestacy claimants, we should have to find that the testatrix intended that there was to be no intestacy under Items 2 and 3 of her will, whether her niece and nephew had children who predeceased them both or never had children, and that there was to be an intestacy in Item 7 if her granddaughter never had a child but not if she had children who died before she did. We do not think that was the testatrix's intent. On the contrary, we believe that, in view of the general intent manifested in other provisions of the will to dispose of the entire estate, and the will's general structure, the testatrix intended that the phrase in Item 7 "if all of them shall die before his or her share shall become payable as aforesaid" meant either "if no child shall live until his or her share shall become payable as aforesaid" or "if there is no child capable of taking." Such a construction would be in accord with the rule that the general intent prevails over minor discrepancies, omissions or contradictions. *McElroy, supra,* at 229 Md. 283; *Payne v. Payne,* 136 Md. 551, 111 Atl. 81 (1920). If it were necessary to supply the additional phrase, the language used in Items 2 and 3 shows the particular words to be used in Item 7, but we believe that, under the particular circumstances of this case, the language used in Item 7 can be reasonably construed in the manner we have set forth without the necessity of adding to the words of the will.

That this construction carries out the testatrix's intent is made even more evident when the result of a partial intestacy is considered. Such an intestacy would result in one-half of the corpus of the trust created by Item 7 being vested in her son, for whom the testatrix had made no provision outside of bequests of tangible personal property, and in the other one-half being vested in her granddaughter, for whom the testatrix had made no provision other than bequests of tangible personal property and a life interest in one-half of the residue of her estate.[1] That re-

---

1. The failure of the testatrix to make any financial provision for her son John does not indicate any lack of affection or trust. John

sult would be inconsistent with the testatrix's clearly expressed intent in the entire structure of the will. As Judge Prendergast said in his opinion:

> "It may be significant that the testatrix deliberately skipped over her son in disposing of her residuary estate, and that she thought it prudent to provide only a life estate to her granddaughter by the other root. To construe the ultimate limitation narrowly, so as to result in a partial intestacy, would be to direct the remainder on the [one] side to the very generation skipped over, and on the other side to vest it outright in the person she had carefully limited to a life estate. This would certainly be an incongruous result."

We hold there was no intestacy.

## II

In the portion of his opinion dealing with the date when the takers of the residue are to be determined, Judge Prendergast held that: "[T]his court concludes that the trust estate created for Eleanor Moale Lehr must be distributed to the children of John S. Gittings living at the time of the death of Annie M. Winter in 1902. This means that the trust estate will be divided into five shares, one for each of the children living when Mrs. Winter died; and, since four of them have since died, their respective shares, being vested, pass to their personal representatives." We agree.

The contingent gift here involved is necessarily to the members of a class whose number was undetermined at the time the will was executed. John, the son of the testatrix, was alive at that time and could have had additional children after the will was made and before his mother died. The question therefore becomes when the members of the class are to be determined; whether at the time of the death of the life tenant, as in *Demill v. Reid*, 71 Md. 175, 17 Atl. 1014 (1889), or at the death of

---

was made the sole trustee of the three trusts created by the testatrix and was made executor without bond. It may well be that John's financial circumstances were such that the testatrix deemed it expedient to make provision for his children rather than for him.

the testatrix, as in *Chism v. Reese,* 190 Md. 311, 58 A. 2d 643 (1948).

The holding and impact of *Demill* were succinctly set forth by Judge Hammond (now Chief Judge), for the Court, in *Baker v. Baylies,* 231 Md. 287, 291-92, 189 A. 2d 820 (1963), as follows:

> "In that case the will gave a life estate to a grandson, with alternative contingent remainders to his children and their issue, if any, or if none then to the children of a son of the testator. The second contingency occurred and the remainder was given to the children of the son then living to the exclusion of those who would take as the representatives of children who had died before that time. Judge Miller, for the Court, said: 'It seems to us to be clear law, as well as good sense, that in a case like this where there is an ultimate limitation upon a contingency to a *class of persons* plainly described, and there are persons answering the description *in esse* when the contingency happens, they alone can take.' * * * [T]he impact of the rule has been restricted by construing wills as applying to named or ascertainable remaindermen so that the *Demill* doctrine was not controlling. The *Demill* rule is clearly recognized by this Court as one of construction only, and not as a binding rule of law. *Boynton v. Barton,* 192 Md. 582, 588-592."

In *Evans v. Safe Deposit & Trust Co.,* 190 Md. 332, 340-41, 58 A. 2d 649 (1948), Judge Markell, for the Court, said:

> "In the later cases, and some earlier, when gifts were not expressly conditioned upon survival, *e. g.,* by the words 'then living' or other unequivocal words, they were, by the rule of early vesting or by analogous reasoning, held not to be class gifts, or by early determination of class membership they became vested and ceased to be class gifts * * * '[I]t is generally held that, in the absence of a clear indication of a contrary intent, the time at which the membership of a class is fixed and determined, and at which the respective in-

terests of its members become vested, and assume the character of a tenancy in common, is at the death of the testator. 13 *A.L.R.* 616; *Alexander on Wills*, § 880.' *Newlin v. Mercantile Trust Company*, 161 Md. 622, 637, 158 A. 51, 57."

See also, Reno, *Further Developments as to the Alienability and Transmissibility of Future Interests in Maryland*, 15 Md. L. Rev. 193, 214-20 (1955), and Casner, *Class Gifts to Others Than to "Heirs" or "Next of Kin": Increase in the Class Membership*, 51 Harv. L. Rev. 254 (1937).

We think that the time for the determination of the class membership was the date of the death of the testatrix. The appellant, Gladys Gittings Barret, the only child of John who survived Eleanor, the life tenant, contends, *inter alia*, that it would be unreasonable to construe the Item 7 contingent remainder to the children of John as referring to anyone other than his children living at the death of the life tenant when the testatrix had made express provision in another part of Item 7 for a distribution to his children living at the time of her death, and had provided in Items 2 and 3 for a distribution which incorporated by reference a distribution to such children who were living at the time of her death. We take a different view of the testatrix's intention, as gleaned from her will.

The ultimate remainder in Items 2 and 3 was to the residue of the estate, a provision which sheds no light on the question here considered. It is true that in Item 7, half of the residue was to be divided into as many parts as there shall be "living children of my son, John S. Gittings, at the time of my death," while the preceding provision for the half of the estate to be held for Eleanor for life provides only for a remainder contingent as to event, "to the children of my son, John S. Gittings." It may well be, however, that, in the testatrix's mind, the specific reference to John's children living at the time of her death in one portion of the residuary paragraph was meant, by implication, to carry over to the reference to John's children in the portion of the paragraph dealing with the contingent remainder after Eleanor's death. If the testatrix had meant to provide for a different period for the ascertainment of the bene-

ficiaries after Eleanor's death, a specific reference to the children of John living at the time of Eleanor's death would have been indicated to distinguish the period of ascertainment from that set forth in the clause which followed. Moreover, the fact that the testatrix expressly limited the provision for the half of the residue left to or for the benefit of John's children to those of his children living at the time of her death, indicates to us that she wished a similar restriction to apply to the contingent remainder interest on her granddaughter's death.

No useful purpose would be served in setting forth and discussing the varying factual situations in the cases decided by this Court after *Demill* which found the principle of construction therein set forth applicable or inapplicable. Whether or not the will before us is to be construed as containing a positive intent that the contingent remainder was to vest in John's children living at the time of the testatrix's death, we find that, at the least, there was no clear intention to the contrary and that under the principle of early vesting, or by analogy thereto, the remainder provision is to be taken as referring only to John's children living at the time of the death of the testatrix.

*Decree affirmed; costs to be paid out of the principal of the trust.*