MADDEN *v.* MERCANTILE-SAFE DEPOSIT AND TRUST COMPANY, Trustee u/w of William R. Hammond ET AL.

[No. 448, September Term, 1970.]

*Decided June 3, 1971.*

The cause was argued before HAMMOND, C. J., and MC-WILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Harvey R. Clapp, III*, and *Arthur W. Machen, Jr.*, with whom were *Venable, Baetjer & Howard* on the brief, for appellant.

*G. Van Velsor Wolf* and *Albert S. Barr, III*, with whom were *Piper & Marbury* on the brief, for John F. Kelly, guardian *ad litem*, etc. et al., part of appellees. Peter Madden, in proper person, another appellee. No brief

filed on behalf of Mercantile-Safe Deposit and Trust Company, Trustee, etc., other appellee.

SINGLEY, J., delivered the opinion of the Court.

Mrs. Audrey H. Madden, a widow born in 1890, made formal demand on Mercantile-Safe Deposit and Trust Company (the Mercantile), trustee of the residuary trust created by the will of her father, William R. Hammond, to deliver the assets of the trust estate to her, on the theory that she had become the owner of both the life and remainder interests in the trust estate, and was therefore entitled to terminate it. The Mercantile brought a declaratory action in the Circuit Court of Baltimore City, joining Mrs. Madden and all of her father's descendants, including those who were and were not *sui juris,* and those unknown or unborn, as parties defendant. From a decree holding that the trust could not be terminated, and that Mrs. Madden was not entitled to claim the corpus, Mrs. Madden has appealed. The appellees are her children and grandchildren.

The relevant facts are quite simple. Mrs. Madden's father, William R. Hammond, survived his wife and died on 19 December 1909, when he was 46 years of age, leaving his daughter Audrey (now Mrs. Madden) then 19 years of age, as his only next of kin and heir at law, under Maryland Code (Bagby ed. 1911) Art. 93, §§ 123-4 and Art. 46, §§ 1-2. By the terms of Mr. Hammond's will, executed on 24 August 1908, some 19 days after his wife's death, and about 16 months before his own death, after bequests of $10,000 to each of his two brothers and of $5,000 to each of his two sisters, he left the residue of his estate, which amounted at the time to some $222,000, to Safe Deposit and Trust Company of Baltimore (now the Mercantile) as trustee, to pay an annuity of $800 to his mother, an annuity of $520 to his two sisters-in-law and to the survivor of them, with the remaining income to be paid for life to his daughter, now Mrs. Madden, who was named executrix of the will.

Mr. Hammond's mother died in 1937 and the two sisters-in-law died at some date unspecified, but concededly prior to the institution of suit. In 1947, the Pimlico Race Track, inventoried in Mr. Hammond's estate at $70,000, was sold for $1,115,000, so that at the time the proceeding was brought, the corpus of the residuary trust had a value of approximately $2,774,000.

Mrs. Madden, in support of her contention that she has a right to terminate the trust, relies on the language of the will and upon an entirely extrinsic event, to be discussed later. The will, after providing that the net income of the trust was to be paid to Mrs. Madden for life, continues

> "* * * at her death she shall have the power of disposing of my entire estate and property as she may deem fit by a last Will and Testament; but, if my said daughter should die without having made a last Will and Testament then I give, devise and bequeath my estate and property to such persons as by the laws of the State of Maryland would be entitled thereto, in case I had died intestate."

The will contains neither a spendthrift clause nor a provision permitting the invasion of principal.

On 30 June 1943, Mrs. Madden irrevocably released the power of appointment conferred upon her by her father's will, in the manner provided by Chapter 870 of the Laws of 1943, which has survived in somewhat different form as Code (1957, 1969 Repl. Vol.) Art. 93, § 11-108.

The crux of Mrs. Madden's argument is that she, as her father's only next of kin and heir at law at the time of his death in 1909, took a vested interest in the remainder of the trust estate, subject to divestiture only by an exercise of the power of appointment given her by the will. Once the power was irrevocably released a possible divestiture could no longer occur, and she argues that, as the holder of both the income interest and the remainder interest, there has been a merger of interests and she is

legally entitled to terminate the trust, relying on Miller, *Construction of Wills* § 110 at 308-12 (1927) and on *Manders v. Mercantile Trust & Deposit Co.*, 147 Md. 448, 128 A. 145 (1925). Compare, however, *Kirkland v. Mercantile-Safe Deposit & Trust Co. of Baltimore*, 218 Md. 17, 24, 145 A. 2d 230 (1958) ; *Wehrhane v. Safe Deposit & Trust Co.*, 89 Md. 179, 186, 42 A. 930 (1899), where the Court held that a merger which would contravene the "peremptory provisions" of the will which created the trust could not take place.

The validity of this contention turns on several considerations which are discussed in *Manders*, among them the question whether, in the language of that case, "all the parties who are or may be beneficially interested in the trust property are in existence and *sui juris*, and they all consent and agree to the ending of the trust," 147 Md. at 457.[1] This leads us to a problem of construction: are Mr. Hammond's next of kin and heirs at law to be determined as of the date of his death, or as of the date when Mrs. Madden dies, without having exercised the power? If the former is the case, Mrs. Madden is the only person having a beneficial interest; if the latter, she is not.

A gift to "such persons as * * * would be entitled thereto, in case I had died intestate" is clearly a gift to members of a class, which we have defined "as a gift of

---

1. While it has no relevance to the problem before us, it is interesting to note that Code (1957, 1966 Repl. Vol.) Art. 16, § 108, when dealing with the termination of inter vivos trusts, provides, in part:

"Any voluntary trust heretofore or hereafter created, granting or reserving to a beneficiary an estate together with a power to appoint an absolute interest by will, the principal of which trust will pass to the heirs at law of the beneficiary in default of exercise of the power of appointment, may be terminated by a court having jurisdiction of such trust if the court is satisfied that the settlor or creator and the persons presently having beneficial interests in the trust consent to such termination. The term 'persons presently having beneficial interests' shall include all persons in being having a vested or contingent interest on the date of termination of such trust, but shall exclude persons who may have possible interests in the future by reason of becoming one of the class of heirs at law or appointees under the will of the beneficiary."

an aggregate sum (1) to a body of persons uncertain in number at the time of the gift, (2) to be ascertained at a future time, and (3) who are all to take in equal or some other definite proportions; the share of each being dependent for its amount upon the ultimate number of persons," *Evans v. Safe Deposit & Trust Co. of Baltimore,* 190 Md. 332, 58 A. 2d 649 (1948) and the authorities cited at 338. See also, *Geller v. Lust,* 257 Md. 246, 249, 262 A. 2d 510 (1970).

It has been generally held that in the absence of a clear intention of contrary intent, the time at which the membership of the class is fixed and determined, (subject, of course, to increase by the birth of additional members of class) and at which the respective interests of its members become vested, and assume the character of a tenancy in common, is at the death of the testator, *Shank v. Sappington,* 247 Md. 427, 433, 231 A. 2d 712 (1967) ; *Mercantile-Safe Deposit & Trust Co. v. Mercantile-Safe Deposit & Trust Co.,* 246 Md. 106, 115, 228 A. 2d 289 (1967) ; *Evans v. Safe Deposit & Trust Co., supra,* 190 Md. at 341; *Newlin v. Mercantile Trust Co.,* 161 Md. 622, 637, 158 A. 51 (1932). This is not always true, however.

There has probably been no decision of this Court more severely criticized than that in *Demill v. Reid,* 71 Md. 175, 17 A. 1014 (1889), Reno, *Alienability and Transmissibility of Future Interests in Maryland,* 2 Md.L.Rev. 89, 116-18 (1938) ; Reno, *Further Developments as to the Alienability and Transmissibility of Future Interests in Maryland,* 15 Md.L.Rev. 193, 215-16 (1955), largely because the case has been regarded as authority for the proposition that survival is implied as a condition precedent as regards a contingent gift to a class when the rule as regards a contingent gift to designated individuals is otherwise.

It should be clear by now that despite *Schapiro v. Howard,* 113 Md. 360, 78 A. 58 (1910) and *Thom v. Thom,* 101 Md. 444, 61 A. 193 (1905) which are sometimes regarded as having been controlled by *Demill v. Reid,* the result reached in *Demill* is not to be regarded

as the consequence of the application of a rule of law, but rather of a rule of construction, which may be invoked when it has been established that a testator intended that the members of the class be identified at a time other than at his death, *Baker v. Baylies*, 231 Md. 287 at 291-93, 189 A. 2d 820 (1963) ; *Second Bank-State Street Trust Co. v. Weston*, 342 Mass. 630, 174 N.E.2d 763, 769 (1961) ; *Boynton v. Barton*, 192 Md. 582, 64 A. 2d 750 (1949).

As a consequence, the general rule that the members of the class are to be determined at the death of the testator cannot be substituted for his intent and is invoked only to aid his intention, not to defeat it, *Robinson v. Mercantile Trust Co. of Baltimore*, 180 Md. 336, 341, 24 A. 2d 299 (1942), and the class will close at a later date when "some testamentary language or background circumstance also points to determination of class membership at a future time," *Second Bank-State Street Trust Co. v. Weston, supra*, 174 N.E.2d 770 (applying Maryland law) cited with approval in *Baker v. Baylies, supra*, 231 Md. 292-93. Intention may be gleaned not only from language or surrounding circumstances but also from the totality of the scheme of disposition, *Davis v. Mercantile-Safe Deposit & Trust Co.*, 235 Md. 266, 269, 201 A. 2d 373 (1964).

Absent such language or circumstances, the class would have opened and closed at the death of Mr. Hammond, vesting the remainder in Mrs. Madden, despite the existence of the power of appointment, the exercise of which would have worked a divestiture, 1 Casner, *Estate Planning* 550 (3d ed 1961) ; 3 Restatement, *Property, Future Interests* § 276 at 1424 (1940).

Although the law favors the early vesting of estates, Miller, *Construction of Wills, supra*, § 227 at 629-34; *Hans v. Safe Deposit & Trust Co.*, 178 Md. 52, 62, 12 A. 2d 208 (1940), the principle is not applicable here save possibly by way of analogy, *Mercantile-Safe Deposit & Trust Co. v. Mercantile-Safe Deposit & Trust Co., supra*, 246 Md. at 117, and the rule will not be substituted for

the intention of the testator if that intention can be ascertained, *Robinson v. Mercantile Trust Co. of Baltimore, supra,* 180 Md. at 341.

Under Mrs. Madden's family's theory of the case, the remainder did not vest at Mr. Hammond's death, but remains contingent until Mrs. Madden's death, when it will vest in Mr. Hammond's next of kin and heirs at law living at that time, when the class will open and close. It is quite conceivable, in the unlikely event of a failure of Mrs. Madden's issue, that the remainder could vest in the issue of Mr. Hammond's brothers and sisters at such time. An alternative construction, which was not seriously pressed, would be that the remainder would vest in Mr. Hammond's next of kin and heirs at law, other than Mrs. Madden, in being in 1943, when the power was released. We can find no support for such a contention in the language of the will, in the surviving circumstances, or the plan of disposition.

As we see it, the solution clearly falls within 3 Restatement, *Property, Future Interests* § 308 at 1706 (1940) and particularly Comment k to that section:

"§ 308. TIME WHEN 'HEIRS' * * * ARE ASCERTAINED.

"When a limitation is in favor of the 'heirs,' * * * of a designated person, or in favor of other groups described by words of similar import, and the persons who come within the term employed to describe the conveyees are to be determined by a statute governing the intestate succession of property, then the statute is applied as of the death of the designated ancestor, unless an intent of the conveyor to have the statute applied as of some other date is found from additional language or circumstances.

\* \* \*

"*Comment k. Contrary intent — Postponing time of statute's application—Prior interest in sole heir or next of kin.* If a person to whom a

prior interest in the subject matter of the conveyance has been given is the sole heir of the designated ancestor at the death of such ancestor, there is some incongruity in also giving such person all the interest under the limitation to 'heirs' or 'next of kin.' * * * The incongruity is almost as great when A, by will, conveys property 'to B for life then to my heirs' and B is the sole heir of A. Thus, the fact that in such cases, B is the sole heir of A at the death of A tends to establish that A intended his heirs to be ascertained as of the death of B, so that B is prevented from sharing in the limitation to the heirs of A.

\* \* \*

"If A conveys property by will 'to T in trust to pay the income to B for life then to my heirs,' and B is the sole heir of A at his death, this fact tends to establish that A intended his heirs to be ascertained as of the death of B."

5 *American Law of Property* § 22.60 at 441-42 (1952) takes a similar view:

"In two types of cases the argument against allowing the taker of a prior interest to share also in the limitation to the group is strongest. * * * The second type is where A devises land 'to B for life, then to the heirs of A,' and at A's death B is his sole heir. Again, if the statute [governing distribution in intestacy] is applied at A's death and B is allowed to take the remainder, the intention of the testator to give B a life estate is defeated since B receives a fee simple estate. In determining the intention of the testator in these cases an important factor probably should be the situation of A at the date the will is drafted. If at that time he has no reason to believe that B will be his sole heir at his death or even one of his heirs, then conceivably he

meant just what he said. If he can foresee, however, that B is likely to be his sole heir, it is highly unlikely that he intends to describe an interest in B by the words 'heirs of A.' Thus, where the limitation is to the heirs of the testator and the taker of a prior interest is the sole heir at the testator's death, many courts postpone the application of the statute until the death of the prior taker and thereby exclude him."

See also, Simes, *The Law of Future Interests*, § 735 at 208 (2d ed. 1956).

It seems clear to us that Mr. Hammond intended that the class would be composed of such persons as would have been his next of kin and heirs at law in intestacy had he survived his daughter on the one hand, or his next of kin and heirs at law in intestacy other than his daughter if he predeceased his daughter and had she died without exercising the power, on the other. The several reasons which lend support to this conclusion can be found by examining the will itself and by considering the surrounding circumstances. In the first place, the will made generous provision outright for Mr. Hammond's brothers and sisters. The will clearly indicated that he regarded his mother and his sisters-in-law as having a first claim on the income of the trust, before anything was paid to his daughter. There was no provision that the trust was to terminate at the date when the last of the annuitants died, or that Mrs. Madden could invade principal thereafter. On the contrary, her interest was limited to the income for life and to the power to appoint.

Additionally, the use of the words "such persons" contemplated that ultimately the corpus would be distributed to more than one person, and this could only have been meaningful if Mr. Hammond either survived his daughter, in which event the class of takers would have been his next of kin, other than his daughter, or if he prede-

ceased his daughter, in which event the class of takers would be determined as of the date of her, rather than of his, death. This is not the view of the English cases, *Say v. Creed,* 5 Hare 580, 67 Eng. Reprint 1041 (1847), but it is the result reached by a scant minority of the American courts which have considered the question and have found intention from the use of terms importing plurality, *Fidelity Union Trust Co. v. Egenolf Day Nursery Ass'n of Elizabeth,* 64 N.J.Super. 445, 166 A.2d 402 (1960); *Genung v. Best,* 100 N. J. Eq. 250, 135 A. 514 (1927); *In re Bishop's Estate,* 126 Misc. 722, 215 N.Y.Supp. 237 (1926); *In re Wilson's Estate,* 184 Cal. 63, 193 P. 581 (1920); *Grantham v. Jinnette,* 177 N. C. 229, 98 S. E. 724 (1919). While plurality might not be enough if taken alone, if we view the words used in the light of the situation which would exist when the life estate ended, should there be a default in the exercise of the power of appointment, it is highly persuasive, *In re Barnard's Estate,* 351 Pa. 313, 41 A. 2d 578 (1945); *Briden v. Hewlett,* 2 Myl & K 90, 39 Eng. Reprint 878 (1831); compare, *First Safe Deposit Nat'l Bank of New Bedford v. Westgate,* 346 Mass. 444, 193 N.E.2d 683 (1963).

Finally, to grant Mrs. Madden a right to terminate the trust would be permitting her to accomplish, as an unanticipated consequence of her release of the power, a result which she could never have achieved under our law through the exercise of the power. Ever since the decision in *Balls v. Dampman,* 69 Md. 390, 16 A. 16 (1888), decided 20 years before Mr. Hammond drew his will, it has been recognized that the words which in other jurisdictions confer upon the donee of a power to appoint by will a general power of appointment, vest in the donee of a Maryland power only a limited power, which the donee cannot exercise in favor of his own estate or his own creditors, *Frank v. Frank,* 253 Md. 413, 415-20, 253 A. 2d 377 (1969). Mr. Hammond must be charged with knowledge of the limitation imposed by *Balls v. Dampman,* and it may readily be inferred that he was entirely

content to restrict his daughter's power over the corpus of the trust to the right to appoint to persons other than herself. See, in this regard, *McKay v. Audubon Society, Inc.*, 318 Mass. 482, 487, 62 N.E.2d 117 (1945).

In *Baker v. Baylies, supra,* 231 Md. 287 and in *Robinson v. Mercantile Trust Co. of Baltimore, supra,* 180 Md. 336, we found from internal evidence or surrounding circumstances an intention to have the class of takers determined as of a date other than the death of the testator, and we conclude that the same result must be reached in this case. Any other construction in a case where the holder of an equitable life estate would become the sole remainderman would involve a "unique and fantastic interpretation" which the courts should be slow to adopt unless it is clearly in accord with the intent of the testator, *McCurdy v. Safe Deposit & Trust Co. of Baltimore,* 190 Md. 67, 76, 57 A.2d 302 (1948). The same result does not necessarily obtain if the life tenant is one of a class of remaindermen, and not the sole remainderman, *Perin v. Perin,* 139 Md. 281, 115 A. 51 (1921); *Robinson v. Mitchell,* 99 Md. 50, 57 A. 625 (1904).

As Judge (now Chief Judge) Hammond, speaking for the Court, said in *Baker v. Baylies, supra,*

"* * * The incongruity of finding an intent to ultimately give to a legatee who is a life tenant the remainder outright, as heir, after his death, has been commented on in the texts and the cases, 3 Restatement Property Sec. 308, Comment k; 5 *American Law of Property,* Sec. 22.59 (pp. 431-432); cases collected in Note 30 A.L.R.2d 393, 413, *et seq.;* but this has not prevented judicial constructions that such a result was intended or required. See *Weller v. Kolb,* 128 Md. 221 [97 A. 542 (1916)]; Cf. *Safe Deposit and Trust Co. v. Carey,* 127 Md. 593, 596-597 [96 A. 796 (1916)]." 231 Md. at 290-91

In the case before us, there was ample reason to avoid

such an incongruous result. Upon the death of Mrs. Madden, the corpus of the trust will be distributable among the next of kin and heirs at law of William R. Hammond, living at the death of Mrs. Madden, in the manner provided by the 1909 statutes of descent and distribution.

> *Decree affirmed; costs to be paid from corpus of the trust estate.*